IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MITCHELL D. STUCKEY,              )
                                  )
        Plaintiff,                )
    v.                            )    CASE NO. 2:11-CV-112-WKW
                                  )              [WO]
ALABAMA BOARD OF PARDONS          )
AND PAROLES,                      )
                                  )
        Defendant.                )

## MEMORANDUM OPINION AND ORDER

Plaintiff Mitchell D. Stuckey brings this retaliation action against Defendant

Alabama Board of Pardons and Paroles ("ABPP") under Title VII of the Civil Rights

Act.[1]   The case is before the court on the ABPP's motion for summary judgment

(Docs. # 23, 24).  Mr. Stuckey has responded to this motion (Doc. # 31), and ABPP

has replied (Doc. # 32).  The summary judgment motion has been fully briefed and

is ready for disposition.  Both parties have filed motions to strike evidence cited in

the summary judgment submissions; those motions have been denied as moot in a

separate order entered this same date.[2]

---

[1] In full, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., as amended by the Civil Rights Act of 1991 and the Lilly Ledbetter Fair Pay Act of 2009.

[2] ABPP moved to strike portions of Mr. Stuckey's evidentiary submission in its reply brief (Doc. # 32), which Mr. Stuckey opposed (Doc. # 34).  ABPP filed a second motion to strike (Doc. # 37).  Mr. Stuckey responded (Doc. # 44).  Allegations of misconduct and discovery abuse ultimately culminated in a series of motions and hearings on this matter (Docs. # 45-51).  The Federal Rules of Civil Procedure authorize the filing of a motion to strike in limited

Upon careful consideration of the briefs, the relevant law, and the record as a whole, the court finds that ABPP's motion for summary judgment is due to be granted on Mr. Stuckey's Title VII claims.

## I.  JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. §§ 1331 and 1343, as well as 42 U.S.C. § 2000e, *et seq*.  The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of both.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*); Fed. R. Civ. P. 56(a).  The party moving for summary judgment "always bears the initial responsibility of informing the district

---

circumstances, not applicable here.  *See* Fed. R. Civ. P. 12(e); *see also Luster v. Ledbetter*, No. 08cv551, 2009 WL 2448498, at *1 (M.D. Ala. Aug. 10, 2009) (explaining Rule 12(f) only applies to a pleading, not a brief).  Although the form of the motions is not grounded in a federal procedural rule, the substance of the motions will be considered.  Only evidence that is admissible on its face or that can be reduced to admissible form and that complies with Federal Rule of Civil Procedure 56(e) will be considered in deciding a motion for summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); *see also Macuba v. DeBoer*, 193 F.3d 1316, 1322–24 (11th Cir. 1999).  Where challenged evidence is relied upon in this opinion, an appropriate explanation on its admissibility is included.

court of the basis for its motion, and identifying those portions of [the record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish, with evidence beyond the pleadings, that a genuine issue material to each of its claims for relief exists. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 324; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). What is material is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (*per curiam*) (internal quotation marks and citation omitted).

A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.

3

*Greenberg*, 498 F.3d at 1263; *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001). However, if the evidence on which the nonmoving party relies "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). "A mere 'scintilla' of evidence supporting the [nonmovant's] position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party," *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990), and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (*per curiam*). Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 323.

The well-settled summary judgment standard is not altered in the employment discrimination context. Ultimately, "'trial courts should not treat discrimination

4

differently from other ultimate questions of fact.'" *Chapman v. AI Transp.*, 229 F.3d 1012, 1026 (11th Cir. 2000) (en banc) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (discussing employment discrimination review under Federal Rule of Civil Procedure 50)). Therefore, "the summary judgment rule applies in job discrimination cases just as in other cases. No thumb is to be placed on either side of the scale." *Id.*

On summary judgment, the facts must be viewed in the light most favorable to the nonmovant. *See Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002). Hence, "the 'facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case.'" *Id.* (quoting *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000)).

### III.  FACTUAL AND PROCEDURAL BACKGROUND

The LIFE Tech Facility in Thomasville, Alabama ("LIFE Tech") is a residential halfway house. ABPP, a state law enforcement agency, operates LIFE Tech and staffs it with state probation officers. Mr. Stuckey, a white male, served as a probation officer at LIFE Tech starting in April 2007, until his transfer to the Grove Hill Field office in March 2011. Because of the need for comprehensive supervision of the parolees, LIFE Tech always has at least one probation officer present twenty-four hours a day, seven days a week.

On July 9, 2009, Mr. Stuckey arrested a black inmate of the facility for a rules violation and arrested him again when he tried to escape.  The next day Rosslon Jowers, a probation officer also stationed at LIFE Tech, began an unauthorized personal investigation of the arrest.  Ms. Jowers was superior in rank to Mr. Stuckey, but was not in his chain of command, and the arrest conduct was outside her sphere of responsibility.  Following her investigation, Ms. Jowers made statements that Mr. Stuckey understood to be racially motivated, accusing Mr. Stuckey of arresting the inmate based on racial bias.

Mr. Stuckey was not disciplined or even formally investigated for his conduct during the arrests.  Nevertheless, Mr. Stuckey feared that Ms. Jowers's accusation would expose him to discrimination or retaliation.  Mr. Stuckey specifically feared reprisal from other black officials, such as Director of Facilities Velinda Weatherly and Assistant Director Eddie Cook.  Mr. Stuckey claims that he was concerned that Mr. Cook and Ms. Weatherly appeared to be instinctively taking Ms. Jowers's side over the arrest.  On August 18, 2009, Ms. Weatherly called a staff meeting.  Mr. Stuckey and Ms. Jowers attended the meeting.  Ms. Weatherly threatened to transfer anyone who was unhappy at LIFE Tech, and Ms. Jowers was allowed to scold Mr. Stuckey at the meeting about the arrests, in front of all of the LIFE Tech staff.

In response to these events, Mr. Stuckey filed two EEOC charges. Around September 2009, Mr. Stuckey filed an EEOC charge regarding Ms. Jowers's arrest investigation, alleging that he had been discriminated against based on race. On January 20, 2010, Mr. Stuckey filed a second EEOC charge alleging race discrimination and retaliation. This second charge was assigned the same number as the September 2009 charge and appears to allege the same factual basis as the September charge. These EEOC charges form the basis of Mr. Stuckey's allegedly protected conduct.

Mr. Stuckey filed requests for action prior to his transfer. On or about July 30, 2009, Mr. Stuckey requested to be placed on the transfer list out of LIFE Tech. He later requested to be removed from the list on August 28, 2009. Mr. Stuckey also filed several internal grievances prior to his transfer. Mr. Stuckey filed internal grievances related to Ms. Jowers and Ms. Weatherly on July 23, 2009, August 19, 2009, and October 7, 2009. ABPP handles grievances through a chain of command, with several rungs of review. The evidentiary submissions do not detail the ultimate status and result of these grievances.

Employment decisions for ABPP are made by a three-member board. The board at issue here consisted of Bill Wynne (who served as chairman of the board), Robert Longshore, and Cliff Walker (collectively, the "Board," the final decision

maker for ABPP).  Only the Board can make employment decisions for ABPP, although recommendations can be made to the Board by other officials within ABPP. On February 22, 2010, the three-member Board of the ABPP voted to transfer Mr. Stuckey to the Grove Hill field office.  The Board claims to have transferred Mr. Stuckey to fill a vacancy in the Grove Hill office that had been open for thirteen months and to deal with the overwhelming case load of that office.  The identity of the person who recommended this transfer, if anyone, was never established by either party.  Mr. Wynne maintains that he was not aware of Mr. Stuckey's EEOC charges. (Doc. # 24, Ex. 16.)  Mr. Longshore also denies any knowledge related to Mr. Stuckey's EEOC charges (Doc. # 24, Ex. 17), as does Mr. Walker (Doc. # 24, Ex. 19). There is no evidence that any Board member was aware of Mr. Stuckey's internal grievances when the decision to transfer him was made.

The evidentiary submissions offer little to show that the Board was aware of any of the events occurring at LIFE Tech at all.  Only one affidavit links the Board to LIFE Tech.  A volunteer at LIFE Tech, Vallee Hicks, contacted Mr. Wynne several times about LIFE Tech.  She claimed to be motivated by concerns about Mr. Stuckey's treatment and her own relationship with LIFE Tech.  Ms. Hicks told Mr. Wynne about Ms. Weatherly's threat to move employees who were unhappy and also stated that she "related [her] second hand knowledge of what [she] was told had taken

place after [she] left the meeting, as well as other things." (Doc. # 31, Ex. 4 at 2.)  In response, Mr. Wynne told Ms. Hicks that any employee who had complaints should use the grievance system.  Ms. Hicks's affidavit does not indicate whether she ever specifically discussed Mr. Stuckey's situation with Mr. Wynne, much less that she conveyed any specific details to Mr. Wynne about Mr. Stuckey.

While assigned to LIFE Tech, Mr. Stuckey routinely worked extra weekend shifts per month on overtime pay, for which Mr. Stuckey was compensated with one and one-half times his regular hourly pay.  All the probation officers at LIFE Tech were eligible to take overtime slots at the facility on a rotation among the staff.  After Mr. Stuckey was transferred, LIFE Tech was left one officer short.  Because Mr. Stuckey lived in close proximity to LIFE Tech, he asked to work weekend overtime as part of the standard rotation.  LIFE Tech's Acting Director, David Martinie, initially approved this option, but on March 11, 2010, he told Mr. Stuckey that Mr. Cook had denied his request to continue working weekends as part of the staff rotation.  Mr. Martinie offered to include Mr. Stuckey on the list of officers not stationed at LIFE Tech who serve as backups for unassigned overtime slots.  In his new position, Mr. Stuckey had some overtime opportunities at Grove Hill, but not on weekends, and he was compensated with time off instead of pay.  Mr. Stuckey never

worked at LIFE Tech again.  Since Mr. Stuckey's transfer, his overtime pay has dropped to zero from a gross pay of approximately $1,040.00 per month.

After exhausting his administrative remedies, Mr. Stuckey filed this lawsuit on February 15, 2011.  On September 9, 2011, Mr. Stuckey submitted a resignation letter giving two weeks notice, which was effective September 23, 2011.  Mr. Stuckey voluntarily resigned and is no longer an employee of ABPP.

## IV.  DISCUSSION

Title VII prohibits discrimination against any employee because he or she (1) "has opposed any practice made an unlawful employment practice by this subchapter" (opposition clause), or (2) "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter" (participation clause).  42 U.S.C. § 2000e-3(a).  The burden of proof in Title VII retaliation cases based on circumstantial evidence is governed by the framework established in *McDonnell Douglas Corp. v. Green*. *See* 411 U.S. 792, 802 (1973); *see also Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010).  To establish a *prima facie* case of retaliation under Title VII, a plaintiff must prove that (1) he or she engaged in statutorily protected activity, (2) he or she suffered a materially adverse action, and (3) there was some causal relation between the two events.  *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008).

10

After the plaintiff has established the elements of the *prima facie* case, the employer must articulate a legitimate, non-retaliatory reason for the challenged employment action.   Ultimately, to avoid summary judgment on his claim, the plaintiff must raise a genuine issue of material fact that each of the employer's articulated reasons was pretextual.  *See id.*; *see also Chapman v. AI Trans.*, 229 F.3d 1012, 1024–25 (11th Cir. 2000).  The plaintiff may establish pretext by undermining the credibility of the proffered explanation.  *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997).

The concern addressed by a Title VII retaliation action is whether the employment decision was motivated by retaliatory animus and not whether the "employment decision [was] prudent or fair."  *Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000); *see also Damon v. Fleming Supermarkets Of Fla., Inc.,* 196 F.3d 1354, 1361 (11th Cir. 1999).  An employee may not "substitute his business judgment for that of the employer."  *Chapman*, 229 F.3d at 1030.

ABPP has moved for summary judgment on Mr. Stuckey's sole claim of retaliation under Title VII.  ABPP concedes that Mr. Stuckey's EEOC charges were protected activities.  (Doc. # 24 at 38.)  Instead, it argues that Mr. Stuckey has not established the second or third elements of a *prima facie* case.  It claims that Mr. Stuckey cannot demonstrate that his change in overtime opportunities was materially

11

adverse or that there was a causal relationship between his protected activity and his transfer to Grove Hill. The court will first address whether Mr. Stuckey has established that he suffered an adverse employment action and then turn to whether a casual relationship between the protected activity and transfer has been demonstrated. For the reasons to follow, Mr. Stuckey has raised a genuine issue of material fact on the second element, but his *prima facie* case fails on the third element. Mr. Stuckey also has failed to raise a genuine issue of material fact that ABPP's reason for transferring him was pretextual.

## A.    *Prima Facie* **Case**

### *1.    Adverse Employment Action*

In order to sustain a Title VII retaliation claim, an employee does not have to show "an ultimate employment decision or substantial employment action." *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008). Instead, an employee must show that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citations and internal quotations omitted). Thus, the protection provided against retaliation is protection against employer actions that are likely to deter victims of discrimination from complaining

to the EEOC, rather than petty slights, minor annoyances, or a lack of good manners. *Id.* at 68.

ABPP argues that Mr. Stuckey's claim of retaliation predicated on the transfer in March 2011 fails because he lacks sufficient evidence that he suffered an adverse employment action. The loss that Mr. Stuckey points to is his loss of gross pay that he routinely realized for the overtime hours he worked at LIFE Tech as one of the supervising probation officers who staffed the facility around the clock. Mr. Stuckey does not identify any other aspect that was materially different between his work at LIFE Tech and Grove Hill. Grove Hill is within ten miles of LIFE Tech, so the transfer is not claimed by Mr. Stuckey to impose hardship based on burdensome travel. While Grove Hill did require field work, Mr. Stuckey does not raise any claim that this was a materially adverse change. Nor does Mr. Stuckey argue or otherwise raise an issue of material fact concerning whether Ms. Weatherly's threat to transfer him (as opposed to the actual transfer) and Ms. Jowers's berating him in front of his colleagues were adverse employment actions. Mr. Stuckey does argue that he was less able to secure training and firearms practice required for certification at Grove Hill, but these claims are not supported by any evidence and cannot serve as a basis to find an adverse employment action. Mr. Stuckey must rely on his overtime argument.

ABPP makes several arguments against overtime pay being an adverse employment action.  It notes that Mr. Stuckey remained in the same classification level as a Probation and Parole Officer and did not experience a reduction in base salary, benefits, prestige, or responsibility.  ABPP also argues that Mr. Stuckey was not entitled to pay for overtime, but could have been offered compensatory hours instead.  Additionally, ABPP argues that overtime is purely discretionary on the needs of ABPP, and that no employee has a property right to overtime pay or to a specific position or location within ABPP.  Additionally, ABPP cites Mr. Stuckey's transfer request, that was later withdrawn, to argue that Mr. Stuckey did not view the loss of his position at LIFE Tech to be materially adverse.  Finally, ABPP argues that Mr. Stuckey has not been denied overtime, but that he has not received overtime because he has not been required to work the additional hours at LIFE Tech because it is already adequately staffed by the other probation officers stationed there.  In other words, ABPP argues that Mr. Stuckey is not being denied overtime, but overtime opportunities are simply unavailable.

Mr. Stuckey claims to have been deprived of an average of more than $1,000 a month in overtime pay.  Mr. Stuckey calculates this figure based on his personal knowledge, as well as by accessing his pay history through Alabama's Finance Department's online postings.  (Doc. # 31 at 6.)  ABPP has moved to strike this

affidavit by challenging its admissibility at trial.  (Doc. # 32 at 12.)  The court finds that Mr. Stuckey's personal testimony, produced in a signed affidavit, as well as Alabama's pay history, as a business record, could be reduced to forms admissible at trial, and, thus, the court will consider of Mr. Stuckey's overtime calculations.  *See supra* note 2.

Mr. Stuckey has established that he lost customary opportunities for gross pay that resulted from his ability to work overtime at LIFE Tech.  Mr. Stuckey characterizes this overtime as a "customary benefit" of his employment.  (Doc. # 31 at 3.)  He also avers that he was denied overtime at LIFE Tech since his reassignment to Grove Hill.  Beyond this, Mr. Stuckey provides no legal authorities or argument. Despite the purely perfunctory nature of this argument, the court has considered whether Mr. Stuckey has demonstrated that a materially adverse employment action resulted from his transfer, and for the reasons to follow, the court finds that Mr. Stuckey has met his burden in this regard.

In *Crawford*, the Eleventh Circuit considered whether a denial of merit pay was a materially adverse action for purposes of a retaliation claim.  *See* 529 F.3d at 971–72.  Applying the Supreme Court's decision in *Burlington*, the Eleventh Circuit observed that the standard for material adversity had been substantially relaxed in Title VII retaliation cases.  *Id.* at 973.  Additionally, the *Crawford* court

noted that *Burlington* strongly suggested that it is "for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered materially adverse to him and thus constitute adverse employment actions." *Id.* at 974 n.13.

There is no evidence that Mr. Stuckey would not have remained in the regular overtime rotation of probation officers if he was still stationed at LIFE Tech. After he was transferred, he no longer fell into the special rotation for probation officers stationed at the facility. Instead, he had to wait for openings in the overtime schedule without the special preference available to him while working at LIFE Tech. Viewed in the light most favorable to Mr. Stuckey, the evidence establishes that Mr. Stuckey would have customarily received opportunities for overtime and recovered a substantial addition to his base pay, or other benefits such as compensatory time. In light of the relaxed standard for material adversity in retaliation cases and upon consideration of the context of the overall overtime scheme and all the other factors behind the transfer, the court finds that Mr. Stuckey has raised a genuine issue of material fact that his transfer materially altered his pay and benefits and constituted an adverse employment action.

Simply put, Mr. Stuckey has produced sufficient evidence from which a reasonable jury could conclude that the reassignment to the Grove Hill office resulted

16

in the loss of customary benefits particular to LIFE Tech and, thus, was an adverse employment action.  Consequently, Mr. Stuckey has established the second element of the *prima facie* case.

### 2.   *Causal Relationship Between Protected Activity and Transfer*

To establish a *prima facie* case, Mr. Stuckey must also demonstrate a causal connection between the opposition and the retaliatory conduct (in this case, allegedly the transfer from LIFE Tech).  *Goldsmith*, 513 F.3d at 1277.  Causation for a claim of retaliation can be proved by circumstantial evidence:

> We do not construe the "causal link" . . . to be the sort of logical connection that would justify a prescription that the protected participation in fact prompted the adverse action . . . .  Rather, we construe the "causal link" element to require merely that the plaintiff establish that the protected activity and the adverse action were not wholly unrelated.

*Id.* (quoting *Simmons v. Camden Cnty. Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985)).

"In order to show the two things were not entirely unrelated, the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action."  *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000).  "That requirement rests upon common sense.  A decision maker cannot have been motivated to retaliate by something unknown to

him."  *Id*.  "[U]nrebutted evidence that the decision maker did not have knowledge

that the employee engaged in protected conduct" generally extinguishes any causal

connection between the protected activity and the adverse employment action.  *Id*.

Mr. Stuckey has failed to raise a genuine issue of material fact that any member

of the Board knew about Mr. Stuckey's protected activities.  Mr. Stuckey relies

entirely on the information passed from Ms. Hicks to Mr. Wynne.  Mr. Wynne admits

that he was informed by Ms. Hicks that some employees were concerned with the

situation at LIFE Tech.  (Doc. # 32, Ex. 2.)  He claims he told her that those

employees should use the grievance system.  Ms. Hicks states that she contacted Mr.

Wynne several times about LIFE Tech.  (Doc. # 31, Ex. 4 at 1.)  Ms. Hicks says she

contacted Mr. Wynne out of concern for Mr. Stuckey and her own relationship with

LIFE Tech.  (Doc. # 31, Ex. 4 at 1.)  Ms. Hicks claims to have told Mr. Wynne about

Ms. Weatherly's threat to move people who were unhappy and then concludes by

stating that she "related [her] second hand knowledge of what [she] was told had

taken place after [she] left the meeting, as well as other things."  (Doc. # 31, Ex. 4

at 2.)

Viewing these claims in the light most favorable to Mr. Stuckey, the court finds

that he has not created a dispute of material fact on this ground.  Because Ms. Hicks's

affidavit is too vague as to what she told Mr. Wynne, it is impossible to infer that Mr.

Wynne was aware that Mr. Stuckey had filed internal grievances or otherwise engaged in protected conduct.  Mr. Wynne also maintains that he was not aware of Mr. Stuckey's EEOC charges and Mr. Stuckey fails to rebut that attestation.  (Doc. # 24, Ex. 16.)

There is no evidence from which it reasonably can be inferred that Mr. Wynne was aware of the substance of the internal grievances or that he shared his knowledge that Mr. Stuckey had filed grievances with the two other members of the Board.  General knowledge that an investigation or workplace problem is occurring is insufficient to establish awareness on the part of the decision maker.  *See Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354–55 (11th Cir. 1999).  Ms. Hicks's affidavit fails to raise a genuine issue of material fact that the Board was aware that Mr. Stuckey engaged in protected activity.

A second ground exists for finding that Mr. Stuckey has not presented a *prima facie* case under this element.  Establishing a causal connection also requires certain showings in terms of timing.  To demonstrate this element, a plaintiff must show that there is a "very close" temporal proximity between the employer's knowledge of the plaintiff's protected activity and the adverse employment action.  *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (reviewing three-month and four-month periods as insufficient, and holding that a twenty-month period by itself

19

suggests no causation); *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361 (11th Cir. 2007) (finding no causation between plaintiff's complaints of harassment and her termination three months later); *Higdon v. Jackson*, 393 F.2d 1211, 1220 (11th Cir. 2004) (holding that by itself, three months was insufficient to prove causation).

ABPP argues that Mr. Stuckey's six-month delay between the filing of his original EEOC charge in September 2009 and the decision to transfer him on February 22, 2010, is a substantial delay in time. Mr. Stuckey argues that the relevant time frame is the time between his initial complaint and Ms. Weatherly's threat to transfer unhappy employees. Both these arguments miss the mark. Ms. Weatherly was not the decision maker, nor is there any evidence or argument that she influenced the Board's decision to transfer Mr. Stuckey. Mr. Stuckey presents no evidence that Mr. Wynne or any member of the Board for that matter was aware of his EEOC charges or his internal grievances. Without knowledge by the Board of the protected conduct, there is no basis to find the close temporal relationship. Even assuming *arguendo* that Ms. Hicks may have raised the issue of employee grievances with Mr. Wynne, the last grievance Mr. Stuckey filed before his transfer was on October 7, 2009, more than four months before the decision on his transfer, on February 22, 2010. Under controlling case law, a four-month time frame is insufficient to

demonstrate the required temporal proximity between the grievance and the challenged action.

To the extent Mr. Stuckey addresses the causation issue, he simply expresses disbelief that the Board would not have been aware of his EEOC charges and grievances. (Doc. # 31 at 5.) Yet, Mr. Stuckey cannot point to any policy or evidence that might establish knowledge, or even constructive knowledge, on the part of the Board. Mere indignation that the Board was not immediately informed of every dispute and grievance moving through the bureaucratic process falls short of carrying the burden of proof. Mr. Stuckey has failed to create a material issue of fact that the decision maker was aware of his protected conduct or that there was a close temporal nexus between the protected conduct and the transfer. There is, thus, no material issue of fact on the causal connection element of the *prima facie* case.

## B.   <u>Legitimate, Non-Retaliatory Reason and Pretext</u>

Because Mr. Stuckey fails to establish a *prima facie* case, there is no need to address the remaining parts of the *McDonnell Douglas* test, whether Defendants have articulated a legitimate, non-retaliatory reason for the adverse employment actions and whether that reason was pretextual. Nonetheless, assuming that Mr. Stuckey had satisfied the *prima facie* elements, Mr. Stuckey cannot demonstrate that his transfer

to Grove Hill was a pretext for retaliation.  ABPP establishes that Grove Hill had an increasing backlog and had an unfilled position for more than thirteen months, and needed an additional probation officer to help with the case load.  Mr. Stuckey submits no evidence that requires the court to "second-guess as a kind of super-personnel department" ABPP's decision.  *E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000).

The totality of Mr. Stuckey's argument on pretext consists of his opinion that the Board should not have felt a sense of urgency in staffing Grove Hill and his questioning why he was selected for the position out of all the other probation officers who potentially could have been assigned to Grove Hill.  These arguments are not persuasive on the issue of pretext and have no basis in the evidence.[3] Therefore, even assuming Mr. Stuckey had succeeded in presenting a *prima facie* case, summary judgment nonetheless is appropriate because Mr. Stuckey cannot demonstrate that ABPP's reasons for the employment decisions were pretextual. Summary judgment is due to be entered in ABPP's favor on Mr. Stuckey's Title VII retaliation claim.

---

[3] Mr. Stuckey failed to conduct depositions of ABPP's members before the discovery cut-off date, and only ABPP has provided any evidence as to the Board's reasons for the transfer.

## V.  CONCLUSION

For the reasons stated, ABPP is entitled to summary judgment on Mr. Stuckey's Title VII claim.

Accordingly, it is ORDERED that Defendants' Motion for Summary Judgment (Doc. # 23) is GRANTED.  A separate judgment will be issued.

DONE this 27th day of August, 2012.

_____/s/ W. Keith Watkins_____
CHIEF UNITED STATES DISTRICT JUDGE